O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA TRUONG,<br><br>                    Plaintiff,<br><br>         v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>                    Defendant. | Case No. EDCV 11-214-OP<br><br>MEMORANDUM OPINION AND ORDER |

The Court[1] now rules as follows with respect to the two disputed issues listed in the Joint Stipulation ("JS").[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR") and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") erred by failing to obtain Vocational Expert ("VE") testimony; and

(2) Whether the ALJ properly evaluated Plaintiff's credibility.

(JS at 2-3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.
# **DISCUSSION**

**A.**  **The ALJ's Findings.**

The ALJ found that Plaintiff has severe physical and mental

impairments, including anemia and schizoaffective disorder. (AR at 10.) The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform work at a medium exertional level, but would be limited by her non-exertional impairments to unskilled, entry level work. (Id. at 11.) Relying on the Medical-Vocational Guidelines, the ALJ determined that Plaintiff was able to perform the work of cleaner, dishwasher, kitchen helper, motel maid, packager, and assembler. (Id. at 15.)

**B.    The ALJ's Use of the Grids Was Not Error.**

    **1.    Background.**

Plaintiff contends the ALJ improperly relied solely on the grids in making his step five determination, and it was error not to take testimony from a VE regarding the impact of Plaintiff's non-exertional limitations on her ability to work. (JS at 3-7.) The Court disagrees.

    **2.    Applicable Law.**

It is well established that the ALJ may rely upon either the testimony of a VE or by reference to the Medical-Vocational Guidelines to determine whether a plaintiff can perform work in significant numbers in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (citing Desrosiers, 846 F.2d at 577-78) (9th Cir. 1988) (Pregerson, J., concurring)). The Guidelines consist of tables, commonly referred to as "grids," that provide a "short-hand method for determining the availability and numbers of suitable jobs for a claimant." 20 C.F.R. § 404, subpt. P, app. 2; Tackett, 180 F.3d at 1101. The ALJ may rely solely on the Guidelines when the relevant grid "*completely and accurately* represent[s] a claimant's limitations. In other words, a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work or medium work." Tackett, 180 F.3d at 1101 (citation omitted). Where a non-exertional limitation is sufficiently severe so as to <u>significantly</u> limit the range of work permitted by the clamant's exertional

3

limitation, a VE's testimony is necessary. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (quoting Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)); see also Thomas v. Barnhart, 278 F.3d 948, 960 (9th Cir. 2002); Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001). Such is not the case here.

The Social Security Rulings[3] define non-exertional impairments as follows:

> Any job requirement which is not exertional is considered nonexertional. A nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction. Nonexertional impairments may or may not affect a person's capacity to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do.

(Soc. Sec. Ruling 83-15.) Consequently, non-exertional limitations limit the ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); 20 C.F.R. § 404.1569a(c). Non-exertional limitations include difficulty in: functioning because of nervousness, anxiety or depression; maintaining attention or concentration; understanding instructions; seeing or hearing; tolerating physical features of a work setting; and manipulative or postural functions (e.g., reaching, handling, stooping, or crouching). 20 C.F.R. § 404.1569a (c)(1). The severity of the impairment requiring the use of a VE at Step Five is greater than the severity of the impairment required to find an impairment "severe" at Step Two of the ALJ's

---

[3] Social Security Rulings are binding on ALJs. Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

4

analysis. Hoopai, 499 F.3d at 1077.

### 3. Analysis.

Here, the ALJ found that Plaintiff's non-exertional impairments, although severe, resulted only in limiting Plaintiff to unskilled, entry level work. (AR at 11.) Significantly, Plaintiff does not challenge the ALJ's RFC assessment. Based on this RFC finding, Plaintiff's capacity for unskilled work at the medium exertional level "has not been significantly compromised by [her] non-exertional limitations." (Id.) Thus, Plaintiff's non-exertional impairment did not significantly limit the range of work permitted by her exertional limitation, and reliance on the grids was proper. Tackett, 180 F.3d at 1101.

Based on the foregoing, the ALJ properly utilized the grids in the Guidelines to determine that Plaintiff was not disabled. Thus, there was no error.

### C. The ALJ Properly Considered Plaintiff's Testimony.

### 1. Background.

Plaintiff next contends that the ALJ erred by improperly rejecting Plaintiff's credibility with respect to her subjective complaints of impairment. (JS at 9-14.)

Plaintiff failed to appear at the hearing before the ALJ. Accordingly, the ALJ took the matter under submission on the record. (AR at 29.)[4] At the time of his opinion, the ALJ construed Plaintiff's failure to appear as a constructive waiver of her right to appear at the hearing. (Id. at 8.) Plaintiff does not allege that the ALJ failed to consider Plaintiff's testimony, but rather complains about

---

[4] Plaintiff appeared at a previous hearing date, at which the hearing was continued to allow for the presence of a Vietnamese interpreter. (AR at 22-24.)

5

the ALJ's consideration of a March 22, 2008, Adult Function Report completed by Plaintiff. (JS at 9.)

As detailed by Plaintiff, her allegations of impairment were reported in the Function Report as follows:

> She lives in an apartment with her mother; from the time she wakes up until going to bed, she does her personal things such as washing her face, body, teeth, she does laundry for her clothes and goes to supermarket for food, drinks and desserts; she does not take care of anyone else; she does not take care of pets or other animals; before her illnesses, injuries or conditions she could pick up mushrooms, do work study programs and study in college that she can't do now; her illnesses, injuries or conditions have affected her sleep because sometimes she wakes up or gets up earlier at night she hurts because of her nose, [disturb], sneezes, brain, etc., which are affecting her sleep; regarding her personal care, because she has moved she cannot wear enough even though she has traveled around the world, her bathroom is not comfortable and she falls down and she is confused; she does not need any reminders to take care of personal needs and grooming or taking her medicine; she rarely goes outside; she does not drive; she is unable to count change because she is unable to count very well; she has had changes in her hobbies and interests because she cannot think very well like before; she needs to be reminded to go places but does not need someone to accompany her; she does have any problems getting alon[g] with others such as discussing things with her mom or connecting with friends; there have been many changes in her social activities since the illnesses, injuries and conditions; the following items have been affected by her illnesses, injuries and conditions: lifting, squatting,

>bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair-climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands and getting along with others; each of these activities have been affected because she cannot lift well, cannot walk far and cannot work; she has to rest before she can resume walking; she cannot pay attention well; she does finish what she starts; she is not able to follow written and spoken instructions; she is not able to get along with authority figures; she has never been fired or laid off from a job because of problems getting along with other people; she is not able to handle stress as well as before; she is not able to handle changes in routine as well as before; and she uses a cane.

(JS at 9-10 (citing AR at 132-39.).)

### 2. **Applicable Law.**

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's allegations is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient.)

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991). An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on

inconsistencies between claimant's testimony and claimant's conduct and daily activities. See, e.g., Thomas, 278 F.3d at 958-59 (citation omitted). An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. § 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication).

      3.    **Analysis.**

The Court finds that the ALJ provided clear and convincing reasons for finding Plaintiff's subjective complaints less than credible.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they conflicted with the ALJ's

8

RFC assessment. (AR at 12.) Specifically, the ALJ rejected Plaintiff's subjective complaints of impairment because, among other things (1) her daily activities are not significantly limited; (2) physical examination with regard to Plaintiff's alleged physical impairments have been basically within normal limits; (3) the record shows no adverse side effects from medication; and (4) Plaintiff's anemia has not required significant medical intervention. (Id. at 12.)[5]

First, the same Adult Function Report that Plaintiff claims was improperly rejected by the ALJ supports the ALJ's credibility determination. In that report, Plaintiff claimed that she was able to look after her personal hygiene, do laundry, shop for groceries, cook, clean the house, and use public transportation. (Id. at 132-35.) In addition, Plaintiff reported that her hobbies included swimming, aerobics, yoga, walking and jogging, sewing, and reading. (Id. at 136.) She denied needing someone to accompany her when she went out and stated that she is capable of finishing what she starts. (Id. at 136-37.) These reported daily activities are inconsistent with Plaintiff's complaint that she is totally disabled. This was a legitimate basis on which the ALJ could reject Plaintiff's subjective complaints of impairment. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ may properly consider daily activities in his credibility analysis); Morgan, 169 F.3d at 600 (ALJ may properly rely on plaintiff's daily activities); Tidwell, 161 F.3d at 602 (ALJ may properly rely on daily activities inconsistent with total disability); Orteza, 50 F.3d at 750 (ALJ may properly rely on claimant's daily activities).

---

[5] The Court need not specifically review the ALJ's other reasons for discounting plaintiff's credibility, but it has determined that they do "not negate the validity of the ALJ's ultimate [credibility] conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (alteration in original) (citation omitted).

Next, other than a finding that Plaintiff is anemic, there is no medical evidence to support that Plaintiff is disabled due to a physical impairment. In fact, the Internal Medicine Consultation conducted by Jagvinder Singh, M.D., resulted in normal physical findings except for anemia. (AR at 245-49.) Although the lack of objective medical evidence alone cannot support an ALJ's credibility finding, it is a proper factor for the ALJ to consider. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (objective medical evidence may not be sole reason for discounting credibility but is nonetheless a legitimate and relevant factor to be considered in assessing credibility); Morgan, 169 F.3d at 600 (ALJ may properly rely on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell, 161 F.3d at 602 (ALJ may properly rely on weak objective support).

The ALJ's finding that Plaintiff did not suffer from any side effects from medication is also supported by the record. There is no medical evidence to indicate that Plaintiff complained of or otherwise suffered from any significant side effects from her prescribed medication. This too was a proper factor for the ALJ's consideration. Orteza, 50 F.3d at 750 (ALJ may properly rely on the lack of side effects from prescribed medication).

Finally, to the extent that Plaintiff's anemia constituted a severe medical impairment, the severity of the related symptoms is undermined by Plaintiff's conservative treatment. As stated by the ALJ, the medical record does not show that Plaintiff's anemia has ever "required a transfusion or even infusion of blood products." (AR at 12.) Of course, the conservative treatment of an alleged impairment is an appropriate basis upon which to reject Plaintiff's subjective complaints of impairment. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (ALJ may discount claimant's testimony based on conservative treatment); Tidwell, 161 F.3d at 602 (ALJ may properly rely on lack of treatment and helpful medication); Johnson, 60 F.3d at 1432 (ALJ may

properly rely on the fact that only conservative treatment had been prescribed).

Based on the foregoing, the Court finds the ALJ did not err in rejecting Plaintiff's credibility. Thus, there was no error.

## IV.

## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: November 3, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge